UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION


RAYMOND D. GRAUPMAN, )
 )
　　　　　Plaintiff, )
 )
　　　v. ) No. 2:04CV91 JCH
 ) 　　　　　(TIA)
JO ANNE B. BARNHART, Commissioner )
of Social Security, )
 )
　　　　　Defendant. )


## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

　　　This cause is on appeal from an adverse ruling of the Social Security Administration.  All

pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b) for appropriate disposition.

## I.　　Procedural History

　　　Claimant Raymond D. Graupman filed applications for Disability Insurance Benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. and for Supplemental

Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381,

et seq. (Tr. 80-88).[1]  Claimant states that his disability began on June 30, 1998, as a result of

fibromyalgia, chronic pain, and degenerative disc disease.  (Tr. 37, 80-88, 99-108).  On initial

consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr. 49-

72).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 73).  On

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer
(Docket No. 12/filed February 14, 2005).

June 10, 2003, a hearing was held before an ALJ.  (Tr. 35-45).  Claimant testified and was represented by counsel.  (Id.).  Thereafter, on February 27, 2004, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 12-27).  On October 29, 2004, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision.  (Tr. 5-7).  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on June 10, 2003

#### 1.  Claimant's Testimony

At the hearing on June 10, 2003, Claimant testified in response to questions posed by the ALJ and counsel.  (Tr. 37-45).  After the ALJ inquired into Claimant's alleged onset date of June 15, 1994, Claimant's counsel stated that she would not oppose amending the onset date to the date of last insured, June 30, 1998.  (Tr. 37).

At the time of the hearing, Claimant was forty-six years of age. (Tr. 38).  Claimant testified that his date of birth is January 27, 1957, and he is a high school graduate.  Claimant testified that he is seeking a period of disability as of June 30, 1998, due to his constant pain and inability to stand on his feet.  Claimant explained that his pain is all over his body but mostly in his back and legs.  (Tr. 38).  Claimant testified that he experiences intense pain to the point of nauseousness.  (Tr. 38-39).   When he experiences the intense pain, Claimant can hardly walk. (Tr. 39).  If his pain improves, he attempts small tasks like mowing the grass with the lawnmower, but thereafter he pays a price and ends up in bed for a couple of days.  (Tr. 39).

Claimant testified that he can stand on his feet for fifteen to thirty minutes, but if he stands

longer, his legs start to weaken and give out. (Tr. 39). Claimant testified that he can sit for thirty minutes before he starts to experience spasms in his back and legs. (Tr. 39). Claimant can lift ten pounds, but he experiences pain in his lower back when he tries to lift. (Tr. 40). Claimant testified that he experiences pain in his legs when he walks too much or lifts too much. Claimant has problems lifting anything over his head, opening a jar, or holding a book due to the weakness in his arms. (Tr. 40).

Claimant testified that Dr. Bradley referred him to Dr. Abernathy, a specialist in Columbia, who recommended physical therapy treatment. (Tr. 42). Dr. Boatright treated Claimant at a pain clinic in Columbia in 1997. (Tr. 42). Claimant had laser surgery on his facet joints. (Tr. 43). Dr. Warbritton, the family doctor in Paris, scheduled an appointment for Claimant at the Mayo Clinic in 1997, and the doctors diagnosed him with fibromyalgia and degenerative disc disease. Claimant testified that Dr. Dean, a neurologist, and Dr. Jost, a rheumatologist, tested him for different types of arthritis with the results being negative. Dr. Reddy, a rheumatologist, diagnosed Claimant with fibromyalgia and chronic back pain. (Tr. 43). At that time, Claimant could not walk 500 feet without stopping to rest. (Tr. 43-44).

As to his daily activities, Claimant testified that he helps the children prepare for school and then he rests. (Tr. 40). Next, he washes the dishes for two hours, takes care of the animals by providing food and water and walks around the house or outside depending on the weather. (Tr. 40). Claimant cannot walk for long. Claimant testified that he spends two to three hours each day laying down and once or twice a month, he spends the entire day in bed. (Tr. 41). Claimant wakes up about every two hours during the night even though he takes medicine to assist his sleep. Claimant drives a car but not too much because of problems sitting. (Tr. 41).

Claimant testified that he has problems concentrating while reading. (Tr. 42). Claimant testified that his wife takes care of everything. (Tr. 42).

Claimant testified that at that time he had learned to better control his activities to avoid pain. (Tr. 44). Claimant testified that his current pain medications help alleviate the pain. Claimant explained how the correct medication regime and knowing his limitations have enabled him to become a little more stable. Claimant's condition has improved since 1997-98 although he testified he has the same types of symptoms. In 1997-98, Claimant experienced problems concentrating. (Tr. 44).

### 2. Forms Completed by Claimant

In the Disability Reports Adult dated February 6 and March 8, 2001, Claimant reported that he stopped working on May 6, 1994, because of his severe pain, fatigue, muscle spasms, and inability to concentrate. (Tr. 100, 114). Claimant noted that his conditions caused him to work fewer hours because the pain and fatigue prevented him from performing his duties and finishing his jobs. Claimant stated he stopped working, because he could no longer complete every day tasks such as bathing and family duties. (Tr. 100, 114). Claimant listed laborer, equipment operator, and carpenter/painter as his last jobs. (Tr. 101, 115).

## III. Medical Records

From 1993 through 1997, Claimant received treatment for his lower back pain at the Paris Medical Clinic. (Tr. 187-93). The clinic doctor prescribed Darvocet, Soma, and Lorazepam as treatment. (Tr. 187-93). In a treatment note in 1997, the clinic doctor refilled Claimant's Percocet, Soma, and Ativan prescriptions and noted that Claimant would be going to the Mayo Clinic in June. (Tr. 193, 284).

The CT scan of Claimant's lumbar spine on September 26, 1995, revealed normal results. (Tr. 317).

On February 13, 1996, on referral by Dr. Ben Jolly, Dr. Phillip Dean evaluated Claimant for sacroiliac pain. (Tr. 194, 231, 304). Claimant reported lower back pain for the past three to four years and treatment including Tylenol #3 and Soma. (Tr. 194). Claimant's HLAB-27 antigen test revealed negative results. (Tr. 195, 305). Dr. Dean ordered physical therapy and prescribed Medrol and Soma. (Tr. 195, 305). Dr. Dean scheduled an appointment with a rheumatologist and opined that Claimant might need a referral to a chronic pain center. (Tr. 196).

Claimant reported continued low back pain on February 18, 1996, but also noted he is more active since beginning therapy and has more energy. (Tr. 307). Claimant cancelled his appointment on March 20, 1996, and failed to show up for his appointments on March 22 and 25, 1996. On March 27, 1996, Claimant reported that his wife had a baby a week earlier. (Tr. 307). Claimant returned on March 29, 1996, and reported his back pain is not quite as bad. (Tr. 312). Claimant failed to keep his scheduled appointments on April 3 and 5, 1996, and the physical therapist noted discontinuation of dictation on April 18, 1996. (Tr. 312). In the discharge summary dated April 18, 1996, Karen Coupe, a physical therapist, indicated that she discharged Claimant from treatment due to his noncompliance with scheduled appointments. (Tr. 313).

On March 6, 1996, Dr. Geetha Reddy, Division of Immunology and Rheumatology at the University of Missouri, examined Claimant on referral by Dr. Charles Warbritton. Dr. Reddy noted Claimant's chief complaint to be low back pain of long duration. (Tr. 197). Claimant reported being unable to stand more than ten minutes before experiencing significant problems.

Claimant reported taking six tablets of Ibuprofen with some relief. Examination revealed multiple tender points of the back and a full range of motion. Lower extremities revealed full range of motion of both hips, knees, ankles, and feet. Dr. Reddy further noted no significant tenderness. Dr. Reddy opined:

> At this point, I believe that he has chronic low-back pain, mechanical in etiology, with hamstring tightness. I believe he might have something similar to Scheuermann's disease, but I do not have x-rays or lab work to further substantiate this. But as of now, I do believe he has chronic low-back pain with a mechanical component, as well as fibromyalgia.

(Tr. 197). Dr. Reddy prescribed Zoloft and Flexeril and referred Claimant to physical therapy for back exercises. (Tr. 197- 98).

The MRI of Claimant's lumbar spine on September 3, 1996, showed normal results. (Tr. 233, 315).

On January 21, 1997, Dr. Daniel Boatright examined Claimant on referral by Dr. Robert Warbritton, Claimant's family practitioner, for evaluation of persistent lower back pain. (Tr. 201). Claimant reported increased lower back pain over the last five years with cold weather, lifting activities, and bending exacerbating the pain. Claimant reported no improvement with physical therapy and being evaluated by a number of specialists including Dr. Abernathie and Dr Jolly. (Tr. 201). Claimant reported being prescribed a lumbar epidural steroid injection by Dr. Jolly but not having scheduled the injection to date. (Tr. 202). Dr. Boatright noted the MRI of the lumbar spine was entirely unremarkable. Claimant reported not having worked for the last three years. Claimant indicated frustration because of lack of response to previous modalities. (Tr. 202). Dr. Boatright opined that Claimant is somewhat depressed and his affect is somewhat flattened. (Tr. 203). Examination revealed a good range of motion in the cervical, thoracic, and

lumbar spine both in flexion and extension but exquisite point tenderness over the L3-4, L4-5, and L5 facet levels bilaterally with increased lower back pain with radiation into the buttocks and lumbosacral or paraspinal muscle spasm. (Tr. 204). In the Impression section, Dr. Boatright opined that Claimant has chronic mechanical lumbar pain with associated lumbar facet arthralgia, possible fibromyalgia versus Lyme's disease variant, situational depression, nicotine addiction, and chronic physical deconditioning. (Tr. 205). Dr. Boatright started a trial period for an antidepressant and prescribed an epidural steroid injection. Dr. Boatright discontinued Claimant's Percocet prescription opining that he will attempt to alleviate Claimant's pain from other treatment modalities. (Tr. 205). Dr. Boatright encouraged Claimant to stay active and to follow a daily exercise program. (Tr. 206). On January 27, 1997, Dr. Boatright performed an epidural steroid injection, and Claimant tolerated the procedure well. (Tr. 199-200). On February 6, 1997, the Plaintiff underwent a steroid injection. (Tr. 213)

On February 6 and 13, 1997, Dr. Boatright performed an epidural steroid injection, and Claimant tolerated the procedure well. (Tr. 210-12, 213-15, 326-28). On February 24, 1997, Dr. Boatright performed an epidural steroid injection, and Claimant tolerated the procedure well. (Tr. 207, 209). Dr. Boatright noted that Claimant does not request any further long-term pain control. (Tr. 208).

Mayo Clinic treatment records from June to July, 1997, indicate treatment for widespread myalgias and arthralgias. (Tr. 247-63). The total spine examination revealed hypertrophic changes to thoracic spine but the cervical and lumbar spine are negative. (Tr. 255). Dr. Keith Bengtson spoke to Claimant's wife on the telephone after reviewing the results. (Tr. 257). Dr. Bengtson opined that he "would normally recommend a gentle exercise program with mild

aerobic activity such as walking three to five times per week and stretching of spine, shoulder and hip girdle musculature." (Tr. 257). Dr. Bengtson further opined that he would feel more comfortable if Claimant had a second opinion from a rheumatologist. (Tr. 257). Physical examination revealed cervical active range of motion to be full with pain in extremes of rotation and extension; lumbar active range of motion to be -2 in extension with pain in extension; and shoulder active range of motion to be full and pain free. (Tr. 258). Dr. Bengtson noted that Claimant's x-rays, MRIs, and CTs appear completely normal. (Tr. 258).

Claimant continued to seek medical treatment for his back pain from Dr. Warbritton from June, 1997, through the fall of 1997. (Tr. 284-86). Dr. Warbritton prescribed Soma and Percocet. (Tr. 284-86). During one visit, Dr. Warbritton administered a Demerol injection to alleviate Claimant's back pain. (Tr. 284). In the progress noted dated September 3, 1997, Dr. Warbritton noted the following:

> call at home approx. midnight deputy sheriff picked up pt. and friend driving and having a party @ Soma apparently pt. sharing his RX @ friends just filled RX Some #30 earlier on 9/3/97 only 3 left in bottle. I will not fill any similar RX fro him or his wife.

(Tr. 285). In a return visit, Claimant returned complaining of severe pain and requested prescription refills for Soma and Vicodin. (Tr. 286). Dr. Warbritton explained to Claimant that he would no longer write prescriptions for controlled substances until Claimant straightened out his story with the deputy sheriff. Claimant denied being in trouble with the deputy sheriff and left the office. (Tr. 286).

On April 9, 1998 in a follow-up visit with Dr. Warbritton, Claimant reported severe pain over his entire body, especially in his shoulders and legs. (Tr. 216, 287). Examination revealed

severe tenderness over pressure points for fibromyalgia. Dr. Warbritton noted that Claimant's condition is worse due to damp and cold weather. Claimant reported being treated by Dr. Boatright but the injections not benefitting him. Dr. Warbritton found Claimant to have fibromyalgia with acute exacerbation, degenerative joint disease, and degenerative disc disease and prescribed Claimant to take Advil 800 mg and Percocet, and gave Claimant an injection of Nubain with Depo-Medrol. (Tr. 216, 287). Claimant returned on July 7, 1998, and reported severe back pain starting early that morning. (Tr. 217, 289). Dr. Warbritton strongly encouraged Claimant to schedule an appointment with Dr. Jost, rheumatologist, for another evaluation. Dr. Warbritton prescribed Nubain with Vistaril, Tylenol #3, Lorazepam, and Pepcid. (Tr. 217, 289). In a return visit on July 25, 1998, Claimant reported severe back pain and requested a shot. (Tr. 218, 290). Dr. Bonnette, a doctor in Dr. Warbritton's office, administered an injection of Demerol with Vistaril. Claimant represented he was planing on following up with a rheumatologist. (Tr. 218, 290). In a progress note the following is noted: "pt's wife called to have Tylenol #3 refilled & nerve meds. Dr. Bonnette will not refill due to patient's past history." (Tr. 291).

On referral by Dr. Warbritton, Dr. Daniel Jost examined Claimant on September 29, 1998. (Tr. 227). Claimant reported barely able to do anything with weakness, fatigue, irritability, and sleeplessness, as his main problems. Claimant reported being treated at the Mayo Clinic, undergoing physical therapy, receiving injections, and taking anti-inflammatories. Claimant reported difficulty in using his hands to grasp small objects, walking, climbing and descending stairs, sitting down, touching his feet, reaching behind his back and head, dressing, and sleeping. (Tr. 227). Examination revealed Claimant's grip strength to be decreased to about 4/5. (Tr.

228).  Dr. Jost noted Claimant has good range of motion in his neck with pain at extremes and marked decrease in flexion and extension of lumbar spine.  Dr. Jost opined that "[i]t would surprise me if this gentleman does not have fibromyalgia."  (Tr. 228).  Dr. Jost noted that he tested Claimant's fibromyalgia tender points and found them to positive as well as Claimant's control points.  Dr. Jost asked Claimant to bring all of his old studies in his return visit on October 13, 1998.  Dr. Jost noted that Claimant did not return on October 13, 1998.  (Tr. 228).

In an return visit on October 10, 1998, Claimant reported severe back pain, nausea, and vomiting.  (Tr. 293).  Dr. Warbritton treated Claimant with an injection of Meperidine with Phenergan.  (Tr. 293).

On November 20, 1999, Dr. Charles Sutherland treated Claimant for fibromyalgia and noted that Claimant has been referred to a pain clinic and has been prescribed numerous, moderate nonsteroidal anti-inflammatory drugs.  (Tr. 166-67).  Dr. Sutherland noted that Claimant received the diagnosis of fibromyalgia at the Mayo Clinic in 1995, but noted that he needed to read the patient's record.  (Tr. 166).  Claimant returned to Dr. Sutherland on December 4, 1999, and reported no relief on Elavil.  Dr. Sutherland refilled Claimant's medications.  On December 31, 1999, Dr. Sutherland discussed the treatment option of a steroid epidural.  (Tr. 166).

In a follow-up visit on February 14, 2000, Dr. Sutherland refilled some of Claimant's medications and prescribed Vicodin for one month.  (Tr. 166).  In the Medical Source Statement - Physical dated April 16, 2000, for the period of November 20, 1999, to February 14, 2000, Dr. Sutherland opined that Claimant could frequently lift/carry more than fifty pounds and occasionally lift/carry part of an eight hour workday.  (Tr. 336).  Dr. Sutherland further found

that Claimant could stand and/or walk continuously for eight hours of the workday and sit continuously for a total of eight hours. (Tr. 336). Dr. Sutherland opined that Claimant is unlimited in his pushing and/or pulling, reaching, handling, fingering, feeling, speaking, and hearing. (Tr. 337). Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 337).

On March 13 and April 10, 2000, Claimant returned for pain medication refills and reported no further complaints. (Tr. 168). On May 18, 2000, Dr. Sutherland refilled Claimant's Soma and Vicodin prescriptions as treatment for his chronic low back pain and fibromyalgia. (Tr. 169). Claimant reported increased back pain and problems walking on July 26, 2000. In a follow-up visit on September 26, 2000, Claimant reported no complaints and requested refills of his medications. (Tr. 169).

On July 14, 2000, Dr. Jennifer Clark evaluated Claimant on referral by Disability Determinations and reviewed numerous medical records provided for her consideration. (Tr. 338-42). Claimant reported pain all over his body and taking no pain medications. (Tr. 338). Claimant indicated that he can sit for one hour, walk 300 yards, and stand for thirty minutes. (Tr. 339). Claimant reported difficulty lifting twenty-five pounds, running, vacuuming, squatting, bending, or reaching overhead. (Tr. 339). Examination revealed a normal gait and a full range of motion of Claimant's shoulders, elbows, wrists, knees, and ankles. (Tr. 340). Dr. Clark found Claimant to have 12/18 fibromyalgia tender points with multiple control points and full active range of lumbar spine and neck without irritability. In the Impression section, Dr. Clark found Claimant's complaints of migratory pains with no objective findings. Dr. Clark opined that Claimant does not fit the clinical criteria for fibromyalgia. Dr. Clark determined that Claimant has

no restrictions handling objects, hearing, speaking, and traveling. Dr. Clark opined that she would recommend Claimant take breaks from sitting, standing, and walking after two hours, and Claimant not lift and/or carry more than twenty-five pounds due to conditioning. (Tr. 340).

In the Physical Residual Functional Capacity Assessment completed on August 11, 2000, by a hearing officer for Disability Determinations, the officer listed degenerative disc disease as Claimant's primary diagnosis and depression as his secondary diagnosis. (Tr. 345-52). The officer indicated that Claimant had no established exertional, postural, manipulative, visual, communicative, or environmental limitations. (Tr. 346-49). In support, the officer noted a current examination of Claimant revealed that Claimant has full 5/5 strength and a full range of lumbar motion with normal sensation, reflexes, and no spasms. (Tr. 347). The officer further noted that Claimant reports pain with fibromyalgia and tender points but the only positive objective finding reveals mild lumbar degeneration, and so Claimant's pain is not consistent with the objective medical evidence. (Tr. 347). The officer further opined that although Claimant alleges pain everywhere, there is no objective evidence consistent with the amount of pain alleged. (Tr. 350). The officer noted that Claimant's x-rays, CT scans, and MRIs have all been normal except for mild lumbar changes. The officer also noted that two doctors have found Claimant's pain not to be consistent, and Claimant exhibits pain magnification behaviors. The officer opined that the evidence in the file indicates that the amount of pain alleged by Claimant cannot reasonably be expected to be caused by a medically determinable impairment. (Tr. 350). In support, the officer cited to Claimant's treating physicians finding dated April 16, 2000, where Dr. Sutherland opined that Claimant has the ability to lift fifty pounds occasionally, and can stand and sit for eight hours. (Tr. 351). The officer also cited Dr. Clark's findings in support and noted

that Dr. Clark's findings are consistent with the objective evidence. (Tr. 351). The officer noted that Claimant is not taking prescription medications. (Tr. 352). The officer opined that Claimant's allegation of disability is not considered credible, and his statement regarding the diagnosis of fibromyalgia and associated pain are not credible. (Tr. 352).

On November 20, 2000, in a return office visit, Claimant reported right hip pain with no recent injury. (Tr. 170). Dr. Sutherland noted how Claimant limped while walking into the room. Physical examination revealed acute lumbar somatic dysfunction, chronic lower back pain, and fibromyalgia. Dr. Sutherland treated Claimant with a trigger point injection and noted that Claimant tolerated the procedure well. Dr. Sutherland refilled Claimant's prescriptions and directed him to follow up as needed. Claimant returned on January 15, 2001, for refills of medications. (Tr. 170).

On May 1, 2001, Dr. Sutherland completed a physical examination for a Missouri Department of Elementary and Secondary Section of Disability determination. (Tr. 171, 219). Dr. Sutherland noted that Claimant has a normal heel walk and a normal toe walk, and negative straight leg raising sign. Dr. Sutherland opined that Claimant has a history of chronic neck pain and low back pain, and fibromyalgia. Dr. Sutherland noted that he treats patient on an as needed basis. (Tr. 171, 219). Dr. Sutherland opined that Claimant has a normal gait and difficulty with lifting and prolonged standing. (Tr. 173). In the Range of Motion Values, Dr. Sutherland determined that Claimant has normal ranges of motion. (Tr. 174-75).

In the Physical Residual Functional Capacity Assessment completed on May 17, 2001, a medical consultant with Disability Determinations, listed fibromyalgia as Claimant's primary diagnosis and back pain as his secondary diagnosis. (Tr. 176). The consultant indicated that

Claimant had no established exertional, postural, manipulative, visual, communicative, or environmental limitations. (Tr. 177-80). In support, the consultant noted that the treating doctor's medical records indicate that Claimant has five trigger points in his thoracic spine and somatic dysfunction in his lumbar spine. (Tr. 177). The treating notes also reflect that Claimant has a normal gait and muscle tone and Claimant reports difficulty sitting and standing for prolonged periods. The consultant noted Claimant's failure to return daily activity forms and work history report and determined a decision of insufficient evidence for his claim. (Tr. 177, 181).

Claimant returned on June 7, 2001, and July 30, 2001, for refills of his Soma and Vicodin prescriptions. (Tr. 219). On August 24, 2001, Claimant returned for prescription refills, and Dr. Sutherland noted that Claimant "seems to be doing well." (Tr. 219). On October 18, 2001, Claimant returned to Dr. Sutherland for refills of his medications. (Tr. 220). Dr. Sutherland refilled Claimant's Soma and Vicodin prescriptions on December 10, 2001. Dr. Sutherland noted that Claimant should return in six months. (Tr. 220).

On January 9, 2002, Claimant returned to Dr. Sutherland for medication refills. Dr. Sutherland refilled Claimant's Soma and Vicodin prescriptions for one month (Tr. 220). Dr. Sutherland refilled Claimant's medications on February 5, 2002. (Tr. 220-21). On March 11, 2002, Claimant reported no other complaints and requested refills of Vicodin and Soma. (Tr. 184). In a return visit on April 4, 2002, Claimant reported doing well on his medications, and Dr. Sutherland refilled his Soma and Vicodin prescriptions and prescribed a trial of TENS unit. (Tr. 221). On May 22, 2002, Claimant reported receiving some relief from the TENS unit or lower back pain and increased insomnia. Dr. Sutherland prescribed Ambien for his insomnia. (Tr.184,

221).

In a follow-up visit on June 25, 2002, Claimant reported doing well on his medication regime. (Tr. 185). Dr. Sutherland refilled his Vicodin and Soma prescriptions. On July 18, 2002, Claimant reported no relief of insomnia from Ambien. Dr. Sutherland prescribed Ativan. On July 23, 2002, Claimant reported doing well on Vicodin and Soma, and Dr. Sutherland refilled his prescriptions. (Tr. 185).

In response to Claimant's counsel's letter regarding his disability claim, Dr. Sutherland outlined in a letter dated August 20, 2002, Claimant's medical history and treatment and then opined:

> It's my professional opinion that Mr. Graupman, with his longstanding history of chronic low back pain and failure to respond adequately to various modalities of pain relief; I feel that Mr. Graupman cannot work on a full time basis.

(Tr. 186, 354-56).[2] In an addendum, Dr. Sutherland opined that he was "certain all of the supporting medical records from the Mayo Clinic, University of Missouri and my office clearly show Mr. Graupmans [*sic*] disability claim as of June 30, 1998." (Tr. 223, 356).

On October 14, 2002, Dr. Sutherland refilled Claimant's Vicodin, Soma, and Ativan prescriptions during an office visit. (Tr. 358). On November 12, 2002, Claimant reported increased intensity of his chronic low back pain. Dr. Sutherland order a MRI of the lumbar spine and opined that he would determine if Claimant is a candidate fo a series of lumbar epidural steroid injections. On November 26, 2002, Dr. Sutherland performed a lumbar epidural steroid injection, and noted that Claimant tolerated the procedure well. (Tr. 358). In his return visit on

---

[2] "A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), *citing* Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

December 9, 2002, Claimant reported short term relief from the injection. (Tr. 359). Dr. Sutherland refilled his Soma, Vicodin, and Ativan prescriptions. On January 7, February 4, and March 3 and 27, 2003, Dr. Sutherland refilled Claimant's medications. (Tr. 359-60).

On March 2, 2003, an internal medicine doctor completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on behalf of Claimant. (Tr. 268-71). The doctor noted that Claimant can occasionally lift and/or carry twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday. (Tr. 268-69). The doctor determined Claimant to be limited in his ability to push and/or pull in his upper and lower extremities finding that he "experiences significant pain with minimal activity." (Tr. 269). The doctor found that Claimant can never climb, crouch, crawl, or stoop, and can occasionally balance, kneel, and crouch. (Tr. 269). The doctor found that Claimant is limited in reaching all directions but unlimited in handling, fingering, and feeling. (Tr. 270). The doctor found that Claimant is unlimited in seeing, hearing, and speaking. (Tr. 270). The doctor opined that Claimant's narcotic pain medication precludes him from operating heavy machinery or working at heights. (Tr. 271).

On March 19, 2003, Dr. Michael Quinlan completed a disability evaluation of Claimant on behalf of Disability Determinations. (Tr. 264). Claimant reported having fibromyalgia, degenerative disc disease, and chronic pain syndrome. Claimant reported minimal relief from Soma, Vicodin, and Ibuprofen. Claimant reported being unable to stand for more than fifteen minutes without experiencing significant pain and to sit for more than thirty minutes. (Tr. 264). Claimant can lift approximately ten to twenty pounds but lifting more than twenty pounds aggravates his back. (Tr. 264-65). Claimant can walk approximately 100 to 200 yards. (Tr.

265).  Examination revealed mildly decreased motor strength in the lower and upper extremities.

(Tr. 266).  Dr. Quinlan further noted that Claimant's range of motion passively is not limited but

elicits pain.  Trigger point examination did not reveal significant trigger points as reported by

Claimant.  Dr. Quinlan opined that Claimant is unable to work on a full-time basis due to the

amount of pain Claimant experiences.[3]  (Tr. 266).

On April 23, 2003, Dr. Sutherland refilled Claimant's medications.  (Tr. 360).

On July 29, 2003, on referral by Disability Determinations, Dr. Stephanie Reid-Arndt

completed a psychological evaluation in the context of Claimant's application for Social Security

Disability.  (Tr. 361-67).   Dr. Reid-Arndt noted that Claimant's current allegations include

fibromyalgia, chronic pain, and degenerative disc disease.  (Tr. 361).  Claimant reported being

unable to stand for more than fifteen minutes, to sit for no more than thirty minutes, and to walk

100 to 200 yards.  Nonetheless, Claimant reported his pain being better managed on his current

medication regime than in the past.  (Tr. 361).  Claimant reported experiencing some anxiety

secondary to his physical limitations and associated financial problems.  (Tr. 362).  Claimant

denied any current symptoms of depression or any history of significant psychiatric difficulties.

Claimant reported mild cognitive difficulties due to his fibromyalgia.  (Tr. 362).  Dr. Reid-Arndt

opined that brief cognitive screening and psychological interviewing suggests Claimant's cognitive

functioning to be generally intact.  Dr. Reid-Arndt further opined that "it appears that his physical

limitations are the most significant issue hindering his ability to maintain full time competitive

employment."  (Tr. 363).  Dr. Reid-Arndt found Claimant to have a GAF of 70.  (Tr. 364).  In the

---

[3]A treating physician's opinion that a claimant is not able to return to work "involves an issue
reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the
Commissioner gives controlling weight."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Reid Arndt noted that Claimant's physical limitations may limit his ability to complete assigned tasks.  (Tr. 366).

## IV.    The ALJ's Decision

The ALJ found that Claimant met the disability insured status requirements through June 30, 1998.  (Tr. 26).  The ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of disability.  The ALJ found that the medical evidence establishes that Claimant has severe impairments of polymyalgia, mild degenerative disc disease of the thoracic spine, and mechanical low back pain, but his medically determinable impairments do not meet or equal one of the listed impairments set forth Appendix 1, Subpart P, Regulations No. 4. The ALJ opined that Claimant's allegations regarding his limitations are not totally credible.  The ALJ further found that Claimant has the residual functional capacity to perform work-related activities except for lifting or carrying more than fifty pounds occasionally and twenty-five pounds frequently and climbing, balancing, stooping, kneeling, crouching, or crawling more than occasionally.  The ALJ determined that Claimant is unable to perform any of his past relevant work.  (Tr. 26).  The ALJ opined that Claimant has the residual functional capacity to perform substantially all of the full range of light work.  (Tr. 27).  The ALJ noted that Claimant is a younger individual with a high school education.  (Tr. 26-27).  The ALJ opined that Claimant has at least a semi-skilled work background with no relevant transferable skills from any past relevant work.  (Tr. 27).

Considering the light work which Claimant is still exertionally capable of performing in combination with his residual functional capacity, age, education, and work experience, the ALJ

opined that Claimant is not disabled. (Tr. 27).  The ALJ opined that Claimant is not under a disability at any time through the date of his decision and is not entitled to a period of disability or disability insurance benefits or eligible for Supplemental Security Income payments.  (Tr. 27).

**V.      Discussion**

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding fibromyalgia to be a severe impairment.

A.            Severity of Claimant's Impairments

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding fibromyalgia to be a severe impairment.

Fibromyalgia, a chronic condition recognized by the American College of Rheumatology ("ACR"), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, tenderness, and fatigue. See Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine, 1326-27 (Jacqueline L. Longe et al. eds, 2d ed. 2002). Fibromyalgia is diagnosed based on a history of at least three months of widespread pain with tenderness in at least eleven of the eighteen tender-point sites known as trigger points.

Id. Treatments include massage, trigger-point injections, proper rest and diet, physical therapy, patient education, and medication such as muscle relaxants, antidepressants, and anti-inflammatory pain medications. Id.

In his applications for disability benefits, Claimant alleged disability due to fibromyalgia, chronic pain, and degenerative disc disease. The ALJ found Claimant's polymyalgia, mild degenerative disc disease of the thoracic spine, and mechanical low back pain to be severe impairments and concluded that the impairments, alone or in combination, are not of listing level. The Social Security regulations define a nonsevere impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b). In finding Claimant's fibromyalgia not to be a severe impairment, the ALJ not only questioned whether Claimant has a diagnosis of fibromyalgia, he determined that the fibromyalgia did not have more than a minimal impact upon the Claimant's ability to engage in basic work-related activities such that it did not satisfy 20 C.F.R. §§ 404.1521 and 404.921.

The record shows that the ALJ did consider the nature of fibromyalgia in reaching his decision. The ALJ mentions the trigger points used to diagnose fibromyalgia, the clinical signs of fibromyalgia, and the evidence of some of the other symptoms of fibromyalgia, such as reduced range of motion. The Court finds Claimant's contention that the ALJ erred in failing to find his

fibromyalgia to be a severe impairment and to determine its effect on his limitations to be without merit. Fibromyalgia has the potential to be disabling. Forehand v. Barnhart, 364 F.3d 984, 987 (8th Cir. 2004) (noting (1) fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions; (2) no confirming diagnostic tests exist; (3) the Eighth Circuit has long recognized fibromyalgia might be disabling). The Secretary has noted that fibromyalgia is medically determinable and that the presence of certain symptoms, including the presence of focal trigger points, may be sufficient to establish the diagnosis. See Social Security Ruling 99-2p; Brosnahan v. Barnhart, 336 F.3d 671, 678 (8th Cir. 2003) ("objective medical evidence of fibromyalgia [includes] consistent trigger-point findings.").

The ALJ found that Claimant does not have a definitive diagnosis of medically determinable fibromyalgia. The Mayo Clinic treatment notes reflect a Dr. Bengtson's impression of widespread myalgias and arthralgias of uncertain etiology. Further, Dr. Jost, a rheumatologist, examined Claimant and found Claimant to have diffuse paraspinal muscle spasm and pain with exertional rotation of the hips and flexion of the knees, but good cervical and lumbar spine range of motion. Although testing indicated positive fibromyalgia tender points, control points were also positive, and thus Dr. Jost opined "[i]t would surprise me if this gentleman does have fibromyalgia." (Tr. 228). Dr. Sutherland's based his diagnosis on Claimant's reports, and his examination revealed only five positive thoracic spine trigger points. Likewise, Dr. Clark examined Claimant and observed Claimant to have a normal gait, no evidence of joint warmth, redness, swelling, or crepitation with a full active range of motion. Although Claimant had 12/18 fibromyalgia tender points, he also had multiple positive control points and no positive trigger points. Dr. Clark opined that Claimant does not fit the clinical criteria for fibromyalgia. In a

consultative examination, Dr. Quinlan found trigger point examination did not reveal significant trigger points as reported by Claimant. Dr. Quinlan included fibromyalgia as a diagnosis, but the ALJ rejected Dr. Quinlan's diagnosis opining that his findings were inconsistent with his own examination findings and the medical evidence on the record.

The ALJ considered the medical record and the diagnoses by all the treating physicians and explained why he was crediting the diagnosis of some of the doctors and not crediting the diagnosis of other doctors. Based on the objective medical evidence, the ALJ determined Claimant's fibromyalgia not to be a severe impairment, and the undersigned finds that substantial evidence supports the ALJ's determination. The undersigned notes that where there are conflicts in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). This is so even when the medical evidence is in conflict. Cantrell, 231 F.3d at 1107; Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)("Where the medical evidence is equally balanced, ... the ALJ resolves the conflict."). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted).

Nonetheless, the ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints of constant pain were not credible. The credibility of Claimant's subjective complaints is especially important, because Claimant alleges one of his severe impairments is fibromyalgia. Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work.[4] See Young v. Apfel, 221 F.3d 1065, 1069 (8th

---

[4] The ALJ discredited Dr. Sutherland's opinion set forth in the letter dated August 20, 2002, that claimant cannot not work on a full time basis inasmuch as there was no substantive evidence

Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). In addition, the ALJ noted that no physician, even his treating physician, Dr. Sutherland, had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. The ALJ considered Claimant's work history, and noted the record revealed sporadic levels of work activity and thus never demonstrated a consistent motivation to work. Likewise, the ALJ noted that Claimant received minimal or conservative medical treatment. See Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition). The medical record is devoid of any evidence showing that Claimant's condition had deteriorated or precluded him from working in the past. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (claimant not considered disabled when claimant worked with an impairment over a period of years absent significant deterioration). Indeed, the ALJ stated that despite Claimant's testimony regarding constant pain, the medical evidence shows that Claimant's pain was controlled with medication. On July 29, 2003, Claimant reported his pain being better managed on his current medication regime than in the past. Likewise, the ALJ stated the record failed to reveal Claimant's medication not to be effective, or that Claimant suffered severe side-

---

to support this opinion and refuted by his own treatment notes, physical findings, and residual functional capacity opinion. Indeed, in the letter, Dr. Sutherland cites to Claimant's longstanding history of chronic low back pain but makes no reference to fibromyalgia. Likewise, the ALJ discredited Dr. Quinlan's opinion that Claimant is unable to work on a full-time basis due to pain finding that the opinion was based primarily on Claimant's subjective complaints and not supported by his own physical findings.

effects.  Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001); Hutton v. Apfel, 175 F.3d 651,

655 (8th Cir. 1999).  The ALJ further noted inconsistencies between Claimant's subjective

complaints of pain and his daily activities.  In addition, the ALJ opined that Claimant's pain

magnification behavior and distribution of his prescription pain medication further diminished his

credibility.

The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility.  See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits

claimant and gives good reasons for doing so, the courts normally defer to his credibility

determination).  The ALJ may disbelieve subjective complaints where there are inconsistencies on

the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed

out inconsistencies in the record that tended to militate against the Claimant's

credibility.  Those included Claimant's minimal treatment for pain, his lack of work restrictions by

any physicians, and his normal daily activities.  The ALJ's credibility determination is supported

by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's

determination.  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  Accordingly, the ALJ

did not err in discrediting Claimant's subjective complaints of constant pain.  See Hogan v. Apfel,

239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain

were not fully credible based on findings, inter alia, that claimant's treatment was not consistent

with amount of pain described at hearing, that level of pain described by claimant varied among

her medical records with different physicians, and that time between doctor's visits was not

indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal the questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __28th__ day of February, 2006.

                                            __/s/ Terry I. Adelman_____
                                          UNITED STATES MAGISTRATE JUDGE